Merrimack, } 
Oct. 13, 1903. }

### SEETON v. DUNBARTON.

In an action for injuries caused by a defective highway, evidence that other horses were frightened by a stump left beside the road is admissible to show that the plaintiff's horses were frightened by the same object, and is not to be excluded because it tends to establish the existence of a defect for which the defendant town is not liable.

Under chapter 59, Laws 1893, a town is liable to a traveler for injuries resulting from the defective railing of a dangerous highway embankment; but whether a particular embankment is dangerous if unrailed, whether the absence of a railing renders the highway unsuitable for public travel, and whether reasonable care demands that a railing be provided, are questions of fact for the jury.

CASE, for injuries from a defective highway. Trial by jury. Transferred from the October term, 1902, of the superior court by *Wallace*, C. J. At the close of the plaintiff's evidence a nonsuit was ordered, subject to exception.

The plaintiff's evidence tended to prove the following facts: The place of the accident was a common country road over which there was considerable travel. A short time before the accident, which occurred June 21, 1901, the road had been repaired with a road-machine, the face of the highway being left about eleven feet wide, with the center somewhat crowning and raised above the sides, which sloped to the gutters on either side. On the east side of the road, beginning at a point twelve inches from the east wheel track, the side of the road in a distance of twenty inches sloped or dropped off eighteen inches. There was then a perpendicular drop of two inches, and then the side was grassed and sloped at an angle of thirty degrees for a few feet, to the lowest

spot at that side of the highway. The road-machine turned up a stump and left it in the gutter on the west side of the road, two feet west of the west wheel rut. This stump was calculated to frighten horses and had frightened them on two occasions prior to the plaintiff's injury. The horses attached to the meat cart in which the plaintiff was riding were frightened by the stump and jumped suddenly to the right, carrying the right-hand wheels about two feet outside of the rut on that side of the road and over the east side of the highway just outside the two-inch drop in the bank, causing the cart to be overturned and the plaintiff to to be thrown out and injured.

*Taggart, Tuttle & Burroughs* and *Martin & Howe* (*Louis E. Wyman* orally), for the plaintiff.

*Albin & Shurtleff*, for the defendants.

PARSONS, C. J. It was incumbent upon the plaintiff to explain to the jury how the cart in which she was riding happened to be driven so far from the traveled path as to be overturned, and to satisfy them, if she could, that this occurred without fault on her part. The evidence as to the stump and its horse-frightening capacity tended to sustain this branch of the plaintiff's case. The evidence was competent, and could not be excluded because it tended to prove a defect for which the town was not liable in this action.

It is not claimed that the town is liable for a defect of this character, but it is said the highway should have been railed to render it suitable. As to the liability of a town to a traveler injured because of the unsuitable condition of a highway, caused by the defective railing of a dangerous embankment, the statute of 1893 (*c.* 59) made no change. Section 1, chapter 75, Public Statutes, imposing the duty, was not repealed, and the liability to travelers for breach of such duty under the general provisions of section 1, chapter 76, Public Statutes, was expressly retained. *Wilder* v. *Concord, ante, p.* 259. Neither did the legislation of 1893 transform what was before a question of fact for the jury into a question of law for the court. Whether the absence of a railing was a defect, and whether the highway was or not suitable, have always been treated as questions of fact in this jurisdiction. *Downes* v. *Hopkinton*, 67 N. H. 456; *Knowlton* v. *Pittsfield*, 62 N. H. 535; *Dumas* v. *Hampton*, 58 N. H. 134; *Stark* v. *Lancaster*, 57 N. H. 88, 94; *Saltmarsh* v. *Bow*, 56 N. H. 428, 431; *Ray* v. *Manchester*, 46 N. H. 59, 60; *Palmer* v. *Portsmouth*, 43 N. H. 265; *Chamberlain* v. *Enfield*, 43 N. H. 356; *Winship* v. *Enfield*,

42 N. H. 197; *Hall* v. *Manchester*, 40 N. H. 410, 415; *Johnson* v. *Haverhill*, 35 N. H. 74; *Carlton* v. *Bath*, 22 N. H. 559, 563.

Whether the embankment is dangerous as presenting a liability of injury to travelers if unrailed, whether the possibility of injury to travelers in such case is so great that the highway is rendered unsuitable for the travel thereon by the absence of a rail, and whether reasonable men would make repair by providing a rail, are questions to be determined as inferences of fact from other facts proved. Among the facts material to be considered are the character and amount of travel, the character of the road itself, its width and general construction, the character and extent of the slope or descent of the bank, the direction of the road at the place, the length of the portion claimed to require a rail, whether the danger is concealed or obvious, and the extent of the injury likely to occur therefrom. The question is a practical one, which practical men of the county who use and make roads are especially fitted to solve. For its solution, the evidence furnished by a view is ordinarily of great value. But though the question is one depending upon inferences to be drawn from facts, and is one with which the jury are peculiarly fitted to deal, it is not to be submitted to them if on the evidence there is only one conclusion which could be reached by reasonable men. *Gahagan* v. *Railroad*, 70 N. H. 441, 445. The question therefore is: Does the case disclose evidence tending to prove facts from which the essential inferences can be made without violating the laws of natural sequence which all men denominate reasonable? Unless such inferences are so plainly unreasonable that it is clear that, with all the information obtainable from a view, reasonable men could not draw them, the case should have been submitted to the jury. The roadway, eleven feet in breadth, raised some three feet above the earth at the sides, was evidence tending to show that it constituted an embankment or causeway within the meaning of the statute. Whether so raised it was dangerous, presenting a liability of injury thereon, depended upon the character of the slope and the distance of its commencement from the traveled path, the amount of travel, and the probability for any other reasons apparent at the view that persons using the highway with care might suffer injury.

There was evidence that if for any cause the wheels of a carriage were drawn to the right less than two feet from the shoulder of the road, and less than three feet from the traveled path, the carriage would be overturned and injury might reasonably be expected. Upon a crowded city street a slope of that extent and character would clearly be dangerous. Upon a road where there was very little travel it might be unreasonable to consider it so.

Between the extreme conditions of very much and very little travel there would be situations where the use of the road required by the travel upon it would be such that a difference of opinion as to its sufficiency if unrailed would be not only reasonable but probable. In the present case the travel is described as "considerable." From this description it is not to be inferred that the evidence disclosed very little use of the road by travelers, nor that the travel was very heavy; but the statement describes a condition of use between those extremes, as to which under all the circumstances reasonable men might differ as to the necessity of a rail to render the highway suitable for such travel as was found to be borne by it. The fact that the road-machine was used in the repair of the road was immaterial. The question relates to the condition as observed by the jury and detailed in the evidence. Whether such condition was produced by the use of plows, shovels, or road-machine is unimportant. If, as might be inferred from the case, the road-machine was used to scrape the shoulder of the road toward the center, the inference would be that the use described had rendered the slope less abrupt and possibly less dangerous.

Attention has been called to several cases in Massachusetts. *Harris* v. *Great Barrington*, 169 Mass. 271, cited by the plaintiff, is very close in its facts to the present case and sustains the foregoing conclusion. In *Adams* v. *Natick*, 13 Allen 429, *Damon* v. *Boston*, 149 Mass. 147, and *Scannal* v. *Cambridge*, 163 Mass. 91, there was no question of an embankment and there would be no liability under the statute here. *Logan* v. *New Bedford*, 157 Mass. 534, and *Richardson* v. *Boston*, 156 Mass. 145, together with *Damon* v. *Boston*, are cases of foot travelers, and do not aid upon the only question here of suitability for travel with teams.

*Exception sustained.*

CHASE and WALKER, JJ., concurred: BINGHAM, J., concurred in the result, holding that there was evidence that the defect complained of constituted a defective or insufficient sluiceway within the meaning of the statute.

REMICK, J., *dissenting*. I cannot bring myself to regard the condition of the highway complained of in the present case as a dangerous embankment within the meaning of the statute. This court has held that a dangerous embankment, within the meaning of the statute, is one which reasonably ought to be permanently railed to make the highway safe; that the question is whether, for the repair of the unsuitable condition of the highway, reasonable men would

or would not erect a railing; that if the erection of a railing is not the repair reasonably required,—if reasonable men would do something else than erect a secure railing,—it cannot be found that the want of a railing is the cause of injury. *Wilder* v. *Concord, ante, p.* 259 ; *Owen* v. *Derry,* 71 N. H. 405, 406. In my opinion, fair-minded men could not reasonably find that there should have been a permanent railing at the place in question. The idea of a railing along the wrought part of the way, only a foot or thereabouts from the wheel track and several feet inside of the gutter or side of the road, to guard against a mere slope between the wheel track and the gutter, caused, as the record shows, "by repairing the highway with a road-machine in the manner in which country roads are ordinarily repaired," strikes me as absurd and far removed from anything contemplated by the legislature. It is not going too far to say that a permanent railing at the place in question would be a public nuisance. Laws 1899, *c.* 59, *s.* 1. It is hardly probable that by section 1, chapter 59, Laws 1893, a town is required to erect a railing where, by the provisions of section 1, chapter 59, Laws 1899, it will be a public nuisance. Nor can I bring myself to regard the mere slope in the highway, where the plaintiff was traveling and injured, as a defective sluiceway within the meaning of the statute.

Upon the facts presented, I am of the opinion that the nonsuit was properly ordered.