Nov. 4,
  1914.

## Opinion of the Justices.

The power vested in the governor and council to change the routes of existing highways in designating and constructing the trunk lines provided for by section 15, chapter 35, Laws of 1905, was plainly intended to authorize such relocations before the improvements were made and not afterward.

The repair and maintenance of trunk-line highways, imposed upon the towns by section 20, chapter 35, Laws of 1905, does not include the expense of relocating such highways after their improvement.

Where a section of a trunk-line highway has been improved at the joint expense of the state and a town, the governor and council have no authority to construct a new road upon a substantially different location, as a substitute for the highway theretofore designated and improved, and require the town to pay a proportionate part of its cost.

By sections 15 and 16, chapter 35, Laws 1905 (which were added to the original enactment by section 5 [4], chapter 155, Laws 1909), the governor and council were directed to designate for improvement a continuous highway from the Massachusetts state line at Nashua to the boundary between the towns of Woodstock and Lincoln, to be known as the Merrimack Valley road, and were authorized to change the route of said road from existing highways to such extent as the public good might require. Pursuant to the power so granted, the governor and council in 1909 designated for improvement a section of highway extending in the city of Nashua 410 feet south of the southerly line of Pennichuck Brook bridge, and in the town of Merrimack 680 feet north of the northerly line of said bridge. This section was thereafter improved by the state, the city of Nashua, and the town of Merrimack, and now forms a part of the Merrimack Valley road. A proportionate part of the expense of such improvement was paid by the town of Merrimack.

The governor and council have decided that the public good requires the relaying, rebuilding, and alteration of said section according to a plan which provides for a bridge about forty feet east of the present structure and the relocation of the highway north and south of the bridge. The city of Nashua is willing to contribute its share toward the expense of such alteration and has presented to the governor and council a petition praying that the work may be done. The town of Merrimack refuses to join. August 27, 1914, the governor and council, being doubtful of their authority to direct the alteration of the highway as proposed, required the

opinion of the justices of the supreme court upon the following questions: (1) Whether the proposed changes in said highway may lawfully be directed. (2) Whether the town of Merrimack may lawfully be required to pay its due and proportionate share of the cost, if the prayer of said petition is granted and the proposed changes are ordered and directed to be made.

*Walter E. Kittredge* filed a brief in behalf of the town of Merrimack.

*Henry A. Burque* filed a brief in behalf of the city of Nashua.

*To His Excellency the Governor, and the Honorable Council:*

We are asked as to your power to require the "relaying, alteration, and repair" of a portion of the Merrimack Valley road in Nashua and Merrimack.

So far as the changes proposed can be considered repair or maintenance of the highway improved under the provisions of chapter 139, Laws of 1907, or of chapter 155, Laws of 1909, there can be no doubt of the power of the governor and council to order such repair as they consider necessary and to impose such portion of the expense as they find equitable upon the municipalities in which the work is required. Laws 1907, c. 139, s. 8; Laws 1905, c. 35, s. 20 (added by Laws 1909, c. 155, s. 5 [4]). This proposition is so plain that we assume our advice would not be asked, if it were not understood that the proposed plan contemplates the construction of a new road upon a substantially different location, in place of, or as a substitute for, the existing road heretofore improved under the direction of the governor and council. It is not improbable that action of this sort may be necessary in different places over the various trunk lines designated under the legislation relating to road improvement. Increase of traffic, unknown defects in the location, and other reasons may establish that the road was not built or is not now in the place where it now should be. The necessity of a change having developed, the question is whether such contingency has been provided for by legislative action placing with the governor and council the power to make or to require such change.

The governor and council have been constituted the agency through which the state has acted in what has been accomplished in the way of highway improvement. In 1903 (*c.* 133) "An act providing for a state system of highway construction and im-

provement, and for the appointment of highway engineers" was passed. This act placed upon the governor and council the duty of investigation and the preparation of a bill for submission to the general court, for the "inauguration of a system of state work and state expenditure in the future construction and repairs of local and state highways." At the next session such an act was passed (Laws 1905, c. 35), entitled "An act to provide for state aid and for the expenditures of other public moneys in the permanent improvement of main highways throughout the state." This act offered state aid to towns and cities which desired it for the permanent improvement of the highways within their limits. The idea that the aim was permanent improvement appears repeatedly in various sections of the act (ss. 3, 4, 5, 6). All work toward which the state's money was to be expended was required to be performed in accordance with specifications provided by the governor and council (s. 7), and the towns were required to maintain the improved highways to the satisfaction of the governor and council (s. 8); but the act contains no provision for changing the location of any highway except those called "state highways," the entire expense of the construction and maintenance of which was assumed by the state (s. 11).

In 1907 (c. 139) the legislature adopted as an amendment to chapter 35, Laws of 1905, an act providing for the construction of a "state highway from the Massachusetts state line at Nashua to Laconia." Section 1 required the governor and council to "forthwith designate for improvement, by suitable description, a continuous highway from the Massachusetts state line through the cities of Nashua . . . to Lake Winnipesaukee and file the same with the secretary of state." The principal amendment of the act of 1905 increased the allowance from the state to one half the cost of the improved road, with such further sums to towns unable to pay in that proportion as the governor and council thought might be equitable (s. 5). Section 2 provided that "the route of such highway may be changed from existing highways by the governor and council to such extent as in their opinion the good of the public may require, and for that purpose they are authorized to designate such changes, to take or purchase land, and have damages assessed therefor in accordance with the provisions of said act," while section 8 of the act required the towns to keep the road in repair after improvement, with such assistance from the state as the governor and council considered equitable.

Chapter 155, Laws of 1909, substantially reënacted the law of 1907, provided that the route of the Merrimack Valley road should extend over the road designated by the governor and council under chapter 139, Laws of 1907, and made provision for what were called the East Side road and the West Side road. This chapter reënacted the provisions of the act of 1907 as to the state's share in the cost of construction and as to changes in route. These provisions are also to be found in the statutes authorizing other trunk lines. Laws 1913, cc. 158, 162, 168. In none of this legislation is there any express provision authorizing the change of location of a highway once designated and improved. While section 3 of the act of 1905 required towns to set apart a portion of the money annually appropriated for highways for their permanent improvement, under the advice of the state engineer, it did not give the governor and council any authority over the work unless the town sought and received aid from the state. Laws 1905, c. 35, ss. 4–6. The trunk-line statutes do not require the towns to engage in the proposed improvement, but aim to induce them to do so by the provision that towns through which the route runs shall not be entitled to state aid for other roads therein until the improvement on the trunk line is completed. Laws 1907, c. 139, s. 3; Laws 1905, c. 35, s. 17 (added by Laws 1909, c. 155, s. 5 [4]).

If it were assumed that authority could be found for a relocation of the road, no part of the expense could be imposed upon Nashua or Merrimack without their consent, unless power to do so was intended to be given by chapter 84, Laws of 1913. This act provides that the roads designated under sections 15 and 16, chapter 35, Laws of 1905 (Laws 1909, c. 155, s. 5 [4]), being the three trunk lines thereby provided for, "shall be improved by that city, town, or place within which they are located, at the expense of such city, town, or place and to the satisfaction of the governor and council," with provision for the payment of one half or more of the expense by the state, the making of the improvement by the governor and council if the towns refuse to act, and the collection of them of such part of the expense as the governor and council find equitable.

Upon this review of the legislation relating to the subject-matter of the questions, we are constrained to answer each of them in the negative.

It is apparent from the language employed in the first statute that it was understood that the state and the towns were to engage

in making permanent improvements. It was not understood that roads were to be built and abandoned and rebuilt elsewhere because of a change in opinion as to the proper location. Provision was made for repair, but not for relocation and rebuilding. The selection of the particular route which the legislature defined in general terms is well known to have been a question of difficulty as to which different tribunals might come to different conclusions. It is not probable the legislature intended to provide that after the governor and council had designated a particular route, the same tribunal composed of different individuals should relocate the road after it had been built. We have not ascertained with what definiteness the Merrimack Valley route was designated by the governor and council under the act of 1907. If such designation definitely covered the strip in question, the adoption of that designation in terms by the act of 1909 would settle the question. The authority to change the route from existing highways was plainly intended to authorize changes before the improvements were made and not afterward.

The contingency suggested by the questions does not appear to have been contemplated by the legislature, and no provision has yet been made to meet it. The legislation provides for improvement and for repair. As has already been suggested, if what is contemplated is properly repair of the improved road merely, an affirmative answer could be given to the questions submitted. If it is not repair, it could be argued that such action must be improvement and hence strictly within the terms of chapter 84, Laws of 1913, which requires the towns through which the trunk lines pass to improve the same to the satisfaction of the governor and council. But taking into consideration the circumstances under which the act was passed, it is clear that such was not the legislative intent. It is common knowledge that in 1913 the three trunk lines were largely completed; the proposed improvements had generally been made throughout the designated routes. There were some gaps where towns had not acted. The statute was not intended to act upon Nashua and Merrimack, which had improved the road within their limits, but to effect action where none had been taken. The town of Merrimack having improved this highway to the satisfaction of the governor and council, the only duty resting upon the town under existing legislation is to maintain the road so improved.

Understanding that immediate action was not contemplated, we have delayed our answer to afford the town of Merrimack an opportunity to submit a brief upon the questions.

> FRANK N. PARSONS.
> REUBEN E. WALKER.
> JOHN E. YOUNG.
> ROBERT J. PEASLEE.
> WILLIAM A. PLUMMER.

November 4, 1914.