Carroll, }
Nov. 7, 1933. }

GEORGE D. BRIDGHAM *v.* EFFINGHAM.

*Demond, Woodworth, Sulloway & Rogers (Mr. Franklin Hollis* orally), for the plaintiff.

*Conrad E. Snow* (by brief and orally), for the defendant.

PEASLEE, C. J. The correct procedure upon a petition for leave to file a claim for injuries caused by a defective highway (P. L., *c.* 89, *s.* 10) was stated in *Owen* v. *Derry*, 71 N. H. 405, 406. The petition is not ordinarily to be denied unless "it conclusively appears from the admitted facts or the allegations of the petition that the plaintiff has and can have no valid claim against the defendants." Later cases have followed this rule. *Knight* v. *Haverhill*, 77 N. H. 487; *Prichard* v. *Boscawen*, 78 N. H. 131; *Rye* v. *Durham*, 79 N. H. 51; *Watkins* v. *Railroad*, 80 N. H. 468.

In the present instance it is evident that the plaintiff presented a fairly sustainable argument for the soundness of his claim of liability. Neither admitted facts nor the allegations of the petition showed him to be without right, as matter of law. Under such circumstances the petition should be granted. But apparently the parties went to a trial of the facts bearing upon the legal question of the responsibility of the town for the condition of the highway in question. No objection having been made to this procedure, and a finding of facts having been made the basis for a denial of the petition, the sufficiency of the findings to sustain the ruling of non-liability has been considered here.

The defence presented at the hearing in the superior court was that the highway had so far become state-aided that the town was exempt from liability under Laws 1931, c. 122. The statute reads: "Towns shall not be liable for such damages happening upon state roads within their borders, nor upon highways within their borders which are constructed or repaired in whole or in part by the state or by state aid, while such construction is in process or such repairs are being made, nor thereafter."

While the facts stated by the presiding justice do not fully detail just what had or had not been done in the way of making the highway at the place of accident a state aided road, enough appears to show that it did not conclusively appear the locus was not still a town highway, subject to town control and with the accompanying liability for accidental injuries to travelers.

The fact that the selectmen had "selected" this road "for the expenditure of joint fund money" does not show that the whole road had been designated for state aid, even by the town. Much less does it show the concurrent action of the town and the state highway commissioner, as required by the statute. P. L., c. 84, s. 24. There is no finding that the determination of the selectmen had even been communicated to the state authority. Apparently the applications for state aid were limited to the portions of the road such funds would be sufficient to improve each year. The application for state aid is an annual affair. The finding that the application made by the town in 1931 stated that "the location set forth therein was continuous with that of the previous year," quite clearly implies that the application related to a specific part of the road, and not to its entire length. There is no suggestion in the findings that the part so designated included the place of accident.

The finding that "it is fair to assume that up to the present time it has been the intention of the selectmen to continue the improvement

and reconstruction of this road until the whole stretch between the termini mentioned has been completed," has no effect upon the status of that portion of the road as to which they merely entertained that purpose. As already noted, state aid is an annual affair. Application therefor must be predicated upon a vote of the town to raise the required part of the joint fund. P. L., c. 84, s. 20. With certain provisos not important here, it is only as supplementing an appropriation made and certified to the state commissioner before May first that state aid can be granted. *Ib.* What will be done in future years depends upon future action by the town. Until that action has been taken, the selectmen have no power as to future designation of highways to be improved, and their intention in relation thereto is immaterial upon the issue of the status of a road.

The ruling excepted to is based upon the decision in *Grace* v. *Belmont*, 78 N. H. 112, wherein it was held that the exemption from liability applied to the whole of the Merrimack valley road, although the state had not expended any money at the place of the accident. But, as pointed out in *Miner* v. *Franklin*, 78 N. H. 240, the decision in the earlier case related to a road which had been "put under state control by the legislature." *Ib.* 242. The details of such legislative action were not given in either of those cases, but are fully set forth in the *Opinion of the Justices*, 77 N. H. 606, 608, 609. In 1907, the legislature directed the governor and council to designate for state improvement a highway from the Massachusetts state line to Lake Winnipesaukee. Laws 1907, c. 139. In 1909 the legislature enacted that the route should extend over the road designated by the governor and council under the act of 1907. Laws 1909, c. 155.

It was as to this road, so designated and set apart, that the language used in *Grace* v. *Belmont, supra,* was employed. That it was not intended that it should apply to the whole of town roads, parts of which had become state-aided by the concurrent action of the town and state, was definitely decided in *Miner* v. *Franklin, supra.* The decision in the latter case was that although state aid had been granted "for expenditure upon the Hill road," and the money was so expended, nevertheless the parts of that road which had not been so improved, and for the improvement of which no joint fund had been provided or applied for, remained a city highway, for the safe condition of which the city was accountable under the statute.

The argument that the town is not liable because the state commissioner had power to direct what should be done at the place of the accident is based upon a misinterpretation of the facts. That power

is dependent upon the precedent concurrent action of the state and the town. The expenditure of the joint fund is specifically limited to such use. P. L., c. 84, s. 24. It is only as to highways "maintained, either in whole or in part, with money appropriated from the state treasury" (P. L., c. 83, s. 7) that he has power of direction. As before pointed out, the facts found fail to show that the necessary action had been taken to make this part of the road state-aided.

The defendant's argument from the reënactment of the statute after a construction had been put upon it by the court in *Grace* v. *Belmont, supra*, overlooks the further interpretation of the same statute in *Miner* v. *Franklin, supra*. If the meaning the defendant imputes to the earlier decision were a permissible conclusion from the language there used, had there been no later decision, it is clear that no such application of the case can be made when the court has said in a later case, also decided before the statute was reënacted, that *Grace* v. *Belmont* does not apply to the whole of town roads parts of which have become state-aided by the concurrent action of the state and town.

The statute thus construed (Laws 1903, c. 54, s. 6) was amended before these cases were decided (Laws 1915, c. 48, s. 2). As thus amended it was reënacted without change in the revision of 1925 (P. L., c. 89, s. 4) and again amended in 1931 (Laws 1931, c. 122, s. 1). But in none of these instances was any change made in that part of the section involved here.

The statute having been reënacted after both of the above cited cases were decided, the law is that the exemption from liability is given only when town control over the highway has been taken away or limited, and that a grant of state aid upon application of the town affects its liability only as to the portions of highway as to which the aid is so granted, or those as to which at least some official action seeking the grant has been taken.

The underlying thought which is the foundation for each of those decisions, and for the earlier federal case, *Hanover* v. *Burroughs*, 215 Fed. Rep. 817, is that the statutory immunity is given because control has been taken from the town, either in whole or in part. The error in the conclusion reached in the superior court lies in the assumption that town control had been limited in this instance.

It is now stated that the accident happened within a third of a mile of the end of state-aid construction. This does not alter the legal aspects of the case. The line where exemption ends and liability begins exists at the point where state-aid designation ends. Beyond

that point there is liability, whether the distance therefrom is great or small. In *Miner* v. *Franklin*, 78 N. H. 240, the fact that state-aid had been expended upon the road at a point eight hundred feet from the place of accident did not relieve the city from responsibility.

Since the facts found do not conclusively establish the non-liability of the town, it was error to deny the plaintiff's petition. *Prichard* v. *Boscawen*, 78 N. H. 131.

*Exceptions sustained.*

All concurred.