Carroll,
Sept. 21, 1934.

GEORGE D. BRIDGHAM *v.* EFFINGHAM.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Franklin Hollis* orally), for the plaintiff.

*Conrad E. Snow* and *Leonard E. Hardwick* (*Mr. Snow* orally), for the defendant.

ALLEN, J. The motion for a directed verdict specified three grounds. One was that the road at the place of the accident had been placed under state aid.

In the preliminary litigation between the parties upon the issue of the plaintiff's right to file his claim it was held, in *Bridgham* v. *Effingham*, 86 N. H. 332, that the requirements for a state-aid character of the road at the place of the accident were not shown. The present inquiry is whether proof of essentials then lacking has been supplied.

As then appeared, sections of the road were under state aid, but no joint-fund money had been expended to improve a part which took in the place of the accident. The aid was furnished in two successive years. For the second year the selectmen notified the state highway commissioner of their selection of the road to be improved, using a blank form for the purpose. Filled out, it read in part as follows: "The . . . Selectmen . . . of . . . Effingham desire that the Joint Fund money available in the year 1931 . . . be expended upon the following described road: Name of Road being the main road from Effingham Falls to South Effingham. How is this location situated with reference to that of previous year? Continuation . . . and we respectfully ask your concurrence in the above selection." The commissioner approved the location.

Whether this location designated the entire road or the part of it which the fund might be sufficient to improve, is to be determined in the light of the legislation, its policy, and the factual situation. A town's exemption from liability being given in the view that liability should be for some breach of duty, relief from the duty is the broad test of the existence of the exemption. State control means such relief. "The underlying thought . . . is that the statutory immunity

is given because control has been taken from the town, either in whole or in part." *Bridgham* v. *Effingham, supra,* 336.

State control follows the use of state money. Until such use local control continues. The legislation gives no authority to the commissioner in the maintenance of highways not constructed or repaired with some use of state funds. The policy is that not until state aid has been furnished is the state interested in maintenance. The commissioner has no oversight except where the state has aided.

Upon an appropriation entitling a town to state aid an agreement between the selectmen and commissioner for the joint fund to be expended upon a designated highway can be effective only for the section of highway which is to receive the benefit of the fund. It may be for a definite stretch of highway agreed upon in advance of the expenditure to be made upon it or it may be indefinitely for such distance on the highway selected as may be improved with the fund. Here there is a highway intended ultimately to receive state aid for its entire length but with annual appropriations each of which is insufficient to improve more than a part of the length. The plan that the road from one end to the other shall become state-aided does not amount to a designation in a legal sense, even if it has the commissioner's approval. Appropriation is a condition precedent to the validity of approval, and approval may not be beyond a fair estimate of the part of the highway which the fund on hand will be large enough to improve. "State aid is an annual affair. . . . What will be done in future years depends upon future action by the town. Until that action has been taken, the selectmen have no power as to future designation of highways to be improved, and their intention in relation thereto is immaterial upon the issue of the status of a road." *Bridgham* v. *Effingham, supra,* 335.

The reasonable construction of the commissioner's approval is that state control was to extend according to the part of the road which would be placed under improvement from the joint fund. Otherwise there might be a situation of such control for a part of the road which for lack of future town appropriations might never become state-aided in fact. An outcome of that nature is not within the legislative contemplation. State control arising as a statutory consequence of improvement from a joint fund, until the improvement is begun the town's liability to travelers continues. The exemption as to state-aided roads is only applicable to those "constructed or repaired in whole or in part by the state or by state aid" from the time construction or repairs commence. Laws 1931, *c.* 122. Exemption

from liability proceeds for the whole or a part of a highway according as it is thus wholly or partly improved.

Due allowance is to be made for practical considerations. In general, it is not expected that the commissioner will take any charge of a state-aided road until construction or repairs are under way. But when a definite stretch of highway has been properly designated for improvement by action of the selectmen concurred in by the commissioner, it would seem thereupon to become subject to state control although strictly construction is not yet in process or repairs undertaken. "The line where exemption ends and liability begins exists at the point where state-aid designation ends." *Bridgham* v. *Effingham, supra,* 336. And where the fund is to be used for improvement so far as it may extend, the course and progress of the work may not be the sole test of control. But so far as other or additional considerations should be employed therefor, the problem is not here presented. There is nothing to show any concurrence of action for use of the joint fund beyond the distance of actual improvement already made.

As to the sufficiency of the evidence to prove the place of the accident to be on an unrailed dangerous embankment, the plaintiff's testimony is susceptible of belief. According to it, a downward slope from the side of the road, with a descent of nearly two feet in a distance of five to eight feet from the edge of the slope to its foot, was concealed by a growth of bushes which came to the line of the traveled part of the road. While the plaintiff was driving his car slowly in the roadway and near its righthand side, the ground gave way beneath the righthand wheels. It therefore might fairly be concluded that the road material was defective in quality and in connection with the obscured slope created a danger in the embankment making the road unsuitable for the travel there. *Seeton* v. *Dunbarton,* 72 N. H. 269; *Parker* v. *New Boston,* 79 N. H. 54. The embankment was unrailed, but the defendant asserts no failure of proof of causation from the lack of a standard railing. The result renders it unnecessary to pass upon the remaining ground of the motion. The evidence made a case to submit to the jury.

The defendant excepted to the court's refusal to require from the jury a special verdict answering the question whether the accident occurred on a culvert immediately beyond its approach where the plaintiff claimed it happened. Since the general verdict is set aside for another reason, the exception demands no consideration. The plaintiff seeks recovery only for an accident elsewhere than on the

culvert. His testimony about it concludes him. *Harlow* v. *Leclair*, 82 N. H. 506. If the culvert was the place, its condition as defectively railed is immaterial. Proof of the culvert as the location will entitle the defendant to a verdict, since it will show the plaintiff's explicit claim of another place unfounded. However dangerous the culvert, the plaintiff's denial of the causal effect of the danger is the inescapable logic of his testimony, and in this respect his testimony is too definite and positive to permit any probability of its change at another trial. Nor is it probable that the issue of liability for a defective condition of the culvert will again be submitted under the law of the trial. Although the defendant by inattention to it has waived an exception to the court's refusal to limit the plaintiff's claim to his own version of the accident, it is not assumed that rights in respect to the matter will not be hereafter insisted upon.

The jury were instructed that if the accident was on the culvert and the lack of a reasonable railing there caused it, there was liability. The instruction disregarded the statutory substitution of a standard rail erected by the state highway department for a reasonable one as the test of sufficiency in the character of a railing. P. L., c. 89, s. 2. The effect of the change in the statute has been too well considered and settled in *Cozzi* v. *Hooksett*, 84 N. H. 530, to require discussion. No evidence was introduced of the specifications for standard railing, nor any relating to its strength. "... it cannot be said that jurors possess any very definite information on the subject. It is common knowledge that automobiles when out of control often demolish substantial structures which impede their progress." *Ib.*, 534. The verdict may be predicated upon a finding of the accident caused by a defectively railed culvert. As it does not appear that a standard railing, "the requisite maximum safeguard for all dangerous embankments" (*Ib.*, 533), would have prevented the accident, the verdict is set aside.

Exception was taken to the court's statement that in legal effect a defective railing is the same thing as none. As a statement of a general rule it was erroneous. Besides furnishing protection as a barrier in meeting force, one purpose of a railing is its service as a guide and warning. *Kelsea* v. *Stratford*, 80 N. H. 148; *Vidal* v. *Errol*, 86 N. H. 1. A defective railing may answer this purpose as well as a sufficient one, while no railing does not. The need of a railing therefor is an issue of fact. If along the approach to the culvert the bushes growing close to the edge of the roadway told the plaintiff all that a railing would have informed him for his proper course of travel, no

railing was demanded in order to furnish notice. Whether or not the situation there was such that a railing could be found required for protection in this respect, is not a matter of present inquiry.

*New trial.*

BRANCH, J., was absent: the others concurred.