Merrimack,  
June 5, 1906.

BROWN, *Adm'r, v.* BOSTON & MAINE RAILROAD.

The civil liability of a railroad company to a trespasser injured upon its premises is limited by section 2, chapter 75, Laws 1899, to damages occasioned by the willful or gross negligence of the corporation or its employees only when the person injured is engaged in some act described in section 1 of that statute and forbidden by the posted notice provided for therein.

In an action against a railroad company for negligently causing the death of a trespasser, the corporation cannot avail itself of the limited liability created by section 2, chapter 75, Laws 1899, unless it appears that at the time of the accident a notice warning persons against trespassing upon the

railroad premises was maintained in such condition that those for whose benefit it was intended could have known of it by the exercise of reasonable care.

At common law, a railroad company is liable for injuries to a trespasser resulting from its active negligence, if at the time of the accident the person injured was in the exercise of ordinary care, and the corporation knew of his presence in a dangerous situation, or failed to use due care to discover it when circumstances existed which would put a person of average prudence upon inquiry.

CASE, for negligently causing the death of Mary Chandler, the plaintiff's intestate, in the defendants' railroad yard at East Concord, February 25, 1904. Trial by jury. At the close of the plaintiff's evidence a nonsuit was ordered, subject to exception. Transferred from the April term, 1905, of the superior court by *Chamberlin*, J.

The tracks in the yard at East Concord run north and south, the passenger station being located east of the tracks. South of the station and east of the main line is a side track. Seventy-five feet south of the southerly end of the station platform is a frog where the westerly rail of the siding intersects the easterly rail of the main line. About 120 feet south of the frog and on the east side of the tracks is a freight-house; and 260 feet south of the freight-house is a private crossing, from which a road leads in an easterly direction to the yard of Cyrus R. Robinson. In 1901, a gate was built across the way at the east entrance, but it was seldom closed. The following printed notice was affixed to the gate:

"Extract from Public Statutes of New Hampshire, chapter 266, section 5. If any person who enters upon or crosses a railroad at any private way which is closed by gates or bars neglects to securely close them, he shall forfeit for each offence the sum of ten dollars, and shall be liable for any damage that shall be occasioned by such neglect.

"Boston & Maine Railroad. Important notice. This is a private crossing and the gates or bars must be kept closed.

"Trespassers are forbidden to enter or cross here. Any person using the crossing must close the gates or bars securely, and for failure so to do will be prosecuted to the full extent of the law."

The notice was dated December 1, 1895, and was signed by the defendants' general manager. On March 31, 1904, the cloth upon which the notice was printed had been cut from corner to corner, and the printed matter could not then be read without holding the pieces together. The cut appeared to be an old one, but there was no direct evidence as to when it was made.

Miss Chandler was a tall woman about sixty years old, and was very deaf. She was a seamstress by trade, and accustomed to go to East Concord to do dressmaking. On those occasions she had passed through the Robinson yard and up the defendants' right of way in going to the station. On the day of the accident she had been employed at the Robinson house, and intended to return home on the mixed train leaving East Concord for the south at 7:48 that evening. About 7:45 by Robinson's clock, which was understood to be right, she left the house for the station, accompanied by Miss Robinson. There was considerable snow on the ground, and the weather was cold and windy. The two women passed out of the yard onto the defendants' right of way and went north toward the station, walking on the main track until they reached a point opposite the freight-house. They then noticed a train approaching from the north, but it seemed to be a long distance away and both thought it was the mixed train. Miss Chandler said, "The train is coming." They then crossed over to the side track and into a path at the right of that track. From this point Miss Chandler walked ahead of her companion. When Miss Robinson reached the vicinity of the frog she realized from the noise and speed of the approaching train that it would not stop at the station, and shouted a warning to Miss Chandler, who did not hear her. About this time Miss Chandler called back to Miss Robinson, "We've got time," and pressed forward up the path. Miss Robinson remained where she was. When Miss Chandler was last seen before the accident, she was about sixty feet north of the frog. The engine passed without striking her, but after the train had gone by her body was found about twenty-nine feet south of the frog. The first blood stain was found thirty-four feet south of the southerly end of the station platform. The train was the Montreal express, an hour and forty minutes late and running from forty to fifty or more miles an hour. It passed East Concord station that evening at 7:37.

The side track and path converge toward the main line as they approach the passenger station. On the day of the accident sleepers piled east of the path and north of the freight-house extended nearly to the station platform. Near the southerly end of the platform was a switch. The snow had been shovelled out from around the switch for a distance of four or five feet, but south of this point it was banked in between the sleepers and the track, thus narrowing the path. A person could not walk in the path for a distance south of the switch without touching cars passing upon the main line, and the accumulation of snow required one walking there to keep in the path. There was a strong suction toward the train as it passed, and it was difficult

to retain one's foothold when standing at the distance Miss Robinson was from the main track. Miss Chandler was struck, or drawn under the cars by the suction of the train, while in this locality.

At the time of the accident the sky was clear and the moon shone brightly. Miss Chandler was dressed in black. From a point on the side track opposite the freight-house, the view in a northerly direction was unobstructed for a distance of a mile and a half. The train could have been stopped in about 840 feet. With the headlight burning, a person could be seen at or about the track for a distance of 160 feet from the locomotive. The rules of the company required those charged with the running of trains "to approach stations carefully to avoid any risk of accident," and that "the engineman and fireman be on the lookout ahead, when engines or trains are approaching stations," for persons or teams upon or near the track. The engineer and fireman testified that they did not see Miss Chandler or her companion. The engineer further testified that he looked out as he passed the station, but it did not occur to him that he was running within a few minutes of the time of the mixed train, and he was no more vigilant that night in watching for persons who might be going to the station to take the mixed train, than he would be anywhere along the line; that had his train been scheduled to stop at East Concord station, the warning signals would not have been different from those which were given; and that a person walking up the track could not tell by looking whether the express train or the mixed train was approaching, until it had passed. The record does not state what the fireman was doing as the train passed the station.

Eight persons living in the lower part of the village of East Concord testified that at the time of the accident and for many years prior thereto it was their practice, and the practice of those living in that section of the town, to go to the passenger station through the Robinson yard and up the tracks, by the route alleged to have been taken by Miss Chandler; that people go that way to the train every day, and practically to every train; and that they had never heard of any objection to this practice on the part of the railroad.

*Henry F. Hollis* and *Harry J. Brown*, for the plaintiff.

*Streeter & Hollis*, for the defendants.

BINGHAM, J. The defendants contend that the provisions of chapter 75, Laws 1899, do not require that a notice should be

posted to entitle them to the benefits or exemptions there conferred, and that they are relieved from liability in this action, even if no notice was posted. This contention does not require extended consideration if the language used in the act is to be taken as meaning what it says. By section 2, the civil liability of railroads to persons injured " while engaged in any act prohibited by section 1 " is limited to damages occasioned by their " willful or gross negligence." Every act described in section 1 is prohibited when notice has been posted forbidding it. Therefore, the civil liability of railroads, under section 2, is limited to damages occasioned by their willful or gross negligence only when the person injured is engaged in some act described in section 1 that is forbidden by a posted notice.

The defendants further contend that, if notice is necessary, the notice put in evidence was posted and answered the requirements of the statute. An answer to this is, that it does not conclusively appear that this notice was posted at the time of the accident, and that the evidence is such as would warrant a jury in drawing the opposite conclusion. The statutory requisite as to posting is not complied with by showing that a notice was at some time posted upon the defendants' premises, where persons entering thereon would in the exercise of reasonable care see it, but it must further appear that at the time of the accident the notice was maintained in such condition that persons for whose benefit it was intended could by the exercise of like care know of it. It may also be added that we do not think the notice put in evidence answers the requirements of chapter 75, Laws 1899. The purpose of the legislature in enacting the statute was to prevent persons from trespassing upon the property of railroads, by rendering them liable to punishment by fine, and to create a right of defence in favor of railroads, as against persons injured while trespassing, not known to our common law ; and it provided, as a condition to the existence of the liability and the creation of this right, that railroads should post notices warning persons against trespassing upon their premises. What further information, if any, a notice under this statute should contain need not now be considered. It is sufficient for this case that we are of the opinion the one put in evidence was not intended, and does not purport, to comply with its provisions. That notice was drafted long before the enactment of chapter 75, for it bears the date of December 1, 1895. It begins by reciting the provisions of section 5, chapter 266, of the Public Statutes, and is a private-crossing notice under that section. If it was intended as a notice under chapter 75, it was clearly misleading and cannot be given effect under it. It is the general doctrine that "where a statute directs the publication of notices

having reference to personal rights or property, the requirements of the statute are to be strictly pursued"; that nothing that can be reasonably made certain and definite is to be disregarded; and that if the published notices do not conform to what the statute requires, and their tendency is to mislead persons for whose benefit they are intended, no rights will be acquired under them. *Abbot* v. *Banfield*, 43 N. H. 152, 155.

Since the defendants cannot avail themselves of the benefits of chapter 75, the case is governed by the principles of the common law applicable to negligence cases; and under those principles, as understood in this state, the defendants would be responsible for negligently injuring the deceased through their active intervention, even if she were a trespasser, provided at the time of the accident she was in the exercise of ordinary care, and they knew of her presence in a dangerous situation, or failed to exercise due care to discover her presence in such a situation when circumstances existed which would put a person of average prudence upon inquiry. Her presence upon their premises would then be a mere condition and not a contributing cause. *Minot* v. *Railroad*, *ante*, *pp.* 317, 321; *Myers* v. *Railroad*, 72 N. H. 175; *Little* v. *Railroad*, 72 N. H. 61; *Parkinson* v. *Railway*, 71 N. H. 28; *Mitchell* v. *Railroad*, 68 N. H. 96.

It was the duty of the deceased to use the care a person of average prudence would exercise under like circumstances; and her knowledge of the situation and the dangers confronting her on her way to the station the night of the accident is one of the circumstances to be considered in determining the care she should have exercised. According to the evidence, she knew the train she was to take was scheduled to leave the station for the south at twelve minutes before eight. She knew by the clock at the Robinson house it was fifteen minutes before eight when she left for the station. She also knew in a general way the distance she had to travel. When in the vicinity of the freight depot, she saw a train approaching from the north. It appeared to be a long way off. She thought it was the train she was to take, and would stop at the station. She did not know, and was not in fault for not knowing, that it was the express train an hour and forty minutes late, that it would not stop at the station, and that it would pass her, going at the rate of about fifty miles an hour, before she could reach the station. Under such circumstances, a jury might reasonably find that she was justified in believing she could safely continue on her way to the station, and was not negligent in doing so.

On the other hand, it would seem that it could have been found that the defendants were negligent, and that their negligence

caused the deceased's injury. The evidence was that the defendants knew the express train was passing the station within a few minutes of the scheduled time for the arrival and departure of the local train; that they knew, or should have known, there was a path east of the tracks which people were accustomed to use every day in going to trains and to almost every train; that for a short distance south of the station the path was beside the main line; that in that locality the snow was so filled in east of the path as to make it narrow and prevent a person getting a safe distance from the track; and that if a train passed while a person was walking in the path beside the main line, he would be struck by it. This evidence would warrant the inference that the defendants could reasonably have anticipated the deceased's presence in a dangerous situation; and being thus put upon inquiry, their negligent failure to discover her presence and to avoid injuring her could be found from the evidence that it was a clear, moonlight night, that the ground was covered with snow, that the deceased was tall and dressed in black, that the view of the track was unobstructed for a mile and a half above the freight depot, that no greater or different outlook was kept as the train approached and passed the station than on other sections of the road, that the speed of the train was not reduced, and that to have done so would have enabled the deceased to reach the platform in safety. The order must therefore be,

*Exception sustained.*

PARSONS, C. J., and CHASE and WALKER, JJ., concurred.

YOUNG, J., *dissenting.* As it seems to me, a notice which states that "trespassers are forbidden to enter . . . here" is a sufficient compliance with a statute which provides that "no right to enter . . . shall be implied," "when notice has been posted forbidding such trespass," to bring the persons for whom the statute was enacted within its provisions. The notice forbade those who had no legal right to enter upon the defendants' premises to do so. The mere fact it also forbade those who had a right to enter at that point to leave the gate open, and notified them that if they did they would be prosecuted under the provisions of section 5, chapter 266, Public Statutes, is immaterial, for that fact could have no tendency to lead one who had no right to enter to think the railroad proprietors were willing he should make a highway of their right of way.

One purpose the legislature had in view when this statute was enacted was to prevent a person injured on a railroad's right

of way from proving he had a right to be there, by evidence that he or others had been accustomed to use the right of way as he was using it when he was injured. In order to accomplish this purpose without being unfair to those who were in the habit of using railroad property for their private business, the legislature provided that railroads desiring to avail themselves of the provisions of this statute should give notice that they were unwilling for those who had no legal right to do so to enter upon their right of way, by posting notices "forbidding such trespass." In other words, the legislature intended to relieve railroads which posted notices "forbidding such trespass," from the burden of rebutting the presumption that a person who has been accustomed, with the knowledge of and without objection from the owners, to use their land for any purpose, is acting within his rights.

Since the method the legislature provided for relieving railroads of this burden was notice that trespassing on their premises was forbidden, they must, if they would avail themselves of the benefit of this statute, not only post notices "forbidding such trespass," but also must do what the ordinary man would do to keep them posted. In this case there was evidence tending to prove that the notice was not posted at the time of the accident. If the jury should find this to be the fact, the case would stand like *Mitchell* v. *Railroad*, 68 N. H. 96, or *Felch* v. *Railroad*, 66 N. H. 318; that is, whether the defendants ought to have known of Miss Chandler's danger, and whether she was exercising ordinary care, were questions for the jury.

If a trespasser who has been injured by the negligence of landowners in failing to anticipate his presence in time to avoid injuring him—not in failing to act after they are conscious of his danger—may recover, provided he was exercising ordinary care to avoid being injured at the time of the accident, under "the principles of the common law applicable to negligence cases, . . . as understood in this state," it must be because that is the rule of the common law. The reasoning of some of the decided cases is capable of that construction, notwithstanding there is no case in this state in which a trespasser has been permitted to recover in an action of case unless the landowners actually knew of his danger in time to avoid an accident. In *Minot* v. *Railroad*, ante, p. 317, *Mitchell* v. *Railroad*, 68 N. H. 96, and *Felch* v. *Railroad*, 66 N. H. 318, there was evidence from which it could be found that the injured persons were licensees, and this was the theory on which the cases were litigated. In *Parkinson* v. *Railway*, 71 N. H. 28, and *Little* v. *Railroad*, 72 N. H. 61, 502, the defendants were street railways and the plaintiffs were highway travelers. In *Myers* v. *Railroad*, 72 N. H. 175, and *Shea* v. *Railroad*, 69 N. H.

361, the injured persons were trespassers, but they were not permitted to recover. There is another class of cases which holds that the only duty the law imposes on landowners for the benefit of a trespasser is that of not intentionally injuring him. *Davis* v. *Railroad*, 70 N. H. 519; *Buch* v. *Company*, 69 N. H. 257; *Frost* v. *Railroad*, 64 N. H. 220; *Clark* v. *Manchester*, 62 N. H. 577.

It is obvious, however, that when the court used the word "intentional" to describe the landowner's duty, it did not intend to give that word its primary meaning; for if it did, a trespasser cannot recover when his injury is caused by the defendants' failure to perform a landowner's duty, unless an intent to injure existed in their minds at the instant the blow was struck, or the act done, which caused his injury,—or in other words, unless they could be convicted of an assault or murder if their wrongful act contributed to cause his death. The same cases which hold that the only duty the law imposes on landowners for the benefit of a trespasser is that of not intentionally injuring him also hold that he may recover, notwithstanding his wrongful entry, if he were excusably ignorant of his danger, and if the landowners, after they were conscious of it, failed to do what the ordinary man would have done to avoid injuring him. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 162; *Bissaillon* v. *Blood*, 64 N. H. 565. It is immaterial whether the trespasser's injuries are caused by his being in the path of a locomotive or of some part of a stationary machine which the landowners are operating, or whether the thing which causes his injury passes at a given point on its course at regular or irregular intervals; for if he is in its path, and they know of his danger and fail to do what the ordinary man would have done to avoid an accident, he can recover. *Buch* v. *Company*, 69 N. H. 257. But if they are ignorant of his danger, he cannot recover. *Shea* v. *Railroad*, 69 N. H. 361. So it must be that what is really intended when it is said a trespasser cannot recover unless his injuries are intentionally inflicted, is that he cannot recover unless the landowners are conscious of his danger in time to prevent an accident by the use of ordinary care. "Intentionally" is often used in this sense, or as synonymous with "knowingly" (*Lewis* v. *Railway*, 3 Q. B. Div. 195, 206); and when so used, an act is "intentional" if the person who does it is conscious of what he is doing and its probable consequences, without regard to the motive which induced him to act. *Foulger* v. *Steadman*, L. R. 8 Q. B. 65. In this sense, "intentional" is an apt word to describe the injury that results when the person whose act causes it is conscious of the injured person's situation and of his duty in the matter in time to prevent an accident, but is not conscious of an intent to injure any one. As it seems to

me, this is the sense in which " intentionally " is used in the cases which hold that the only duty the law imposes on landowners for the benefit of a trespasser is that of not intentionally injuring him, and that is the sense in which it will be hereinafter used. Whenever an act is spoken of as "intentional," all that is intended is that the person who did it was conscious of the wrongdoer's presence and the probable consequences which would result if he acted or failed to act, but had no intention of injuring the wrongdoer or any one else.

Since a trespasser cannot recover in case without showing that the landowners have failed to perform a duty the law imposed on them for his benefit (*Buch* v. *Company*, 69 N. H. 257), and that his failure to perform a duty the law imposed on him for their benefit did not contribute to cause his injury, the *dicta* in some of the decided cases, that a trespasser who is exercising ordinary care may recover when the landowners are merely charged with knowledge of his presence on their premises, cannot be reconciled with the cases which hold that the only duty the law imposes on landowners for the benefit of a trespasser is that of not consciously doing anything to injure him. Consequently, it will be necessary to examine the principles on which the decisions in both classes of cases are founded, to see which is consonant with reason and the common law. As it seems to me, an examination of these principles will show that the results reached in both classes of cases were right, but that some of the reasoning in respect to the liability of landowners for an injury which a trespasser sustains by their active intervention cannot be sustained, either on principle or authority, and that the court should refuse to follow so much of it as is clearly fallacious.

Although the failure to perform any legal obligation, whether created by the acts of the parties or imposed by law, is, strictly speaking, a legal wrong, yet the failure to perform a duty created by act of the parties or imposed by statute is not what is usually intended when it is said a party is in fault; but what is meant is that he has failed to do what the ordinary man would have done in his situation. As has already appeared, it is an answer in all cases in which the plaintiff bases his right to recover upon the defendants' failure to perform that duty, to show that his failure to perform a duty the law imposed on him for their benefit in respect to the subject-matter of the suit contributed to cause his injury. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 161. It is immaterial whether the duty the injured person failed to perform was that of using ordinary care to avoid being injured, or that of refraining from doing something he was forbidden by law to do, as in the case of the deceased. The converse of this

proposition is, that he may recover whenever he shows that the defendants' failure to perform a duty the law imposed on them for his benefit was the legal cause of his injury.

The legal cause of an injury is the wrong that directly produced it, or the wrong but for which it would not have happened, or the last wrong in the series of events which led up to the accident. All the other events in the series are the conditions on which the cause acted to produce the result. When the plaintiff's wrong concurs in point of causation with the wrong of the defendants, the plaintiff cannot recover; for in such a case his fault is the legal cause of his injury. *Nashua Iron and Steel Co.* v. *Railroad,* 62 N. H. 159, 161.

Although the only duty the law imposes on landowners as such for the benefit of trespassers is that of not intentionally injuring them, it also imposes on them as individuals the duty of using ordinary care to avoid injuring those with whom they know, or ought to know, their business will bring them in contact (*Nashua Iron and Steel Co.* v. *Railroad, supra*); so landowners owe that duty not only to invitees and licensees, but also to trespassers, when circumstances exist which would put an ordinary man on inquiry. *Shea* v. *Railroad,* 69 N. H. 361. Since these are the only duties the law imposes on landowners for the benefit of trespassers, one who is injured must show that their failure to perform one or the other of these duties was the legal cause of his injury.

It will be useful, in considering when a trespasser may recover, to keep clearly in mind the legal distinction between a licensee and a trespasser, and between what must be shown in order to maintain an action for an intentional and for a negligent injury. Much of the confusion as to when a trespasser's fault is the occasion—not the cause—of his injury has arisen from the failure to consider these distinctions and to apply the rule that a person cannot recover for an injury negligently inflicted if his fault contributed to cause it, even when his fault consists of his wrongful entry. *Shea* v. *Railroad,* 69 N. H. 361.

A person is a licensee when he is on the land of others with their consent, expressed or implied. If he is there without such consent and against their will, he is a trespasser. In other words, if a person is a licensee he is rightfully on the landowners' premises, and it cannot be found he is in fault when he shows he was exercising ordinary care. Consequently, he may recover if it appears they failed to do what the ordinary man would have done to prevent an accident. But if he is a trespasser, he is in fault for being there and cannot recover if he counts on their negligently injuring him, unless he shows his wrongful entry was the occasion—not the cause—of his injury.

When the injured person is a licensee, it cannot be found he is in fault if he did what the ordinary man would have done to avoid an accident; but when he is a trespasser, it cannot be found that he is free from fault unless (1) it appears that a wrongful act of the landowners, subsequent to his wrongful entry in point of causation, was the legal cause of his injury, or (2) unless it can be found that an injury which is caused by the landowners' mere inadvertence is knowingly or consciously inflicted. As it seems to me, these are merely different ways of stating the same proposition: that is, that a trespasser's wrongful entry is the legal cause of his injury unless the landowners are conscious of his danger long enough before the accident to prevent it by the use of ordinary care; but for convenience they will be considered as separate propositions.

(1) If a trespasser's wrongful entry concurs with the landowners' mere failure to use ordinary care to avoid injuring him, when circumstances exist which should have put them on inquiry, is his wrongful entry the legal cause, or merely the occasion, of his injury?

No logical reason can be given for saying that in such cases his fault is the occasion of his injury. Notwithstanding that from the existence of facts which would put the ordinary man on inquiry it can be found the landowners are in fault if they fail to make such inquiry, it does not follow from the mere fact they are in fault that the trespasser should be permitted to recover. He is also in fault for being where he is when he is injured, and if the defendants do not see him, or do not actually know of his danger in time to avoid the consequences of his wrongful entry, it cannot be said his fault has ceased to be a cause and become merely the occasion of his injury; for an injured person's fault does not cease to be a contributing cause when it continues up to the time of the accident, no matter how far in the past it originated, unless a fault of the defendants subsequent to his in point of causation—not time—concurred with his to cause his injury. As has been seen, a trespasser's wrongful entry is a fault that will prevent him from recovering if he counts on the defendants' failure to perform a landowner's duty, whether his injury is caused by the condition of their premises (*Clark* v. *Manchester*, 62 N. H. 577; *Frost* v. *Railroad*, 64 N. H. 220; *Buch* v. *Company*, 69 N. H. 257), or by their active intervention. *Shea* v. *Railroad*, 69 N. H. 361; *Myers* v. *Railroad*, 72 N. H. 175. Since his wrongful entry is an answer to an action to recover for an injury caused by their active intervention, it must be an answer when the injury is caused by their mere inadvertence, unless a trespasser's wrongful entry is a wrong prior in causation

to the landowners' thoughtless failure to discover him in time to avoid injuring him when they are merely charged with notice that he is liable to be—not when they know he is—on their premises. A trespasser's wrongful entry does not become a fault prior in point of causation to their inadvertent failure to discover his presence, until it appears that their knowledge of the situation and its dangers is in some respect superior to his. *Batchelder* v. *Railroad*, 72 N. H. 528, 530.

When a railroad has no actual knowledge of a trespasser's presence in time to prevent an accident, it cannot be found that their knowledge of the situation is superior to his from the mere fact that they know when their trains will be at any given point on their premises. If he does not know just when a train will pass him, he knows the road is in use, that trains must keep on the rails, that if he puts himself in the path of one and continues there he will be killed unless the men who are operating it see him in time to prevent an accident, that these men are liable to be careless, and that they cannot devote their whole time to protecting him from the consequences of his wrongful acts. The railroad's knowledge of the situation is in no respect superior to his, nor is their fault in failing to anticipate that he will be in the path of their train different in any respect from his failure to anticipate that the train will be there at the same time; for they cannot know just when and where they will meet him, any more than he can know just when and where he will meet them. In other words, so long as the railroad's servants and the trespasser are alike oblivious to the dangers of the situation, the case should be considered as though neither party were present. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 161. It is as though the railroad sent out a train without any one in charge of it, and the trespasser left his goods on their track without any one to look after them. In that case they might be in fault for sending out a train without any one in charge of it, if circumstances existed which would charge them with notice that he was liable to leave his property on their track; but he would be in fault because of his wrongful entry, and neither could recover from the other in an action of case.

There is no more reason for saying that a train is in charge of an intelligent agent present and acting, when the engineer is absent in mind, than when he is absent in body. When a person's mind is not in control of his body, he is no more an intelligent agent than the engine on which he is riding; and this is true, whether his failure to appreciate the situation is caused by his absence, disease, or negligence. So there is no sufficient reason for saying that a trespasser's wrongful entry is the occasion—not

the cause—of an injury which results from the concurrence of his wrong in being on the landowners' premises and their failure to act after they ought to have known—not after they knew—of his danger, if their failure to know is caused by their mere thoughtlessness.

(2) Can it be said that an injury was knowingly or consciously inflicted, within the rule which permits a wrongdoer to recover, when the landowners were merely charged with knowledge of his presence on their premises.

It does not follow from the rule that a trespasser who is injured by the mere inadvertence of the landowners should not be permitted to recover, that he could not recover if he were injured by their failure to act after they were actually conscious of his danger. Although in such cases the landowners are not guilty of intentionally injuring him, if " intentionally " is given its primary meaning, still if they fail to act after they know of the trespasser's danger and the probable consequences of that failure, their act so far partakes of the nature of an intentional wrong that it is no answer to an action to recover for an injury caused by it to show that he too was in fault, when his fault merely furnished them an opportunity to injure him.   It is no answer to an action to recover for an injury knowingly or willfully inflicted, to show that the plaintiff's fault contributed to cause it.   *Norris* v. *Litchfield*, 35 N. H. 271; *Dole* v. *Erskine*, 35 N. H. 503; *Planz* v. *Railroad*, 157 Mass. 377; *Mugford* v. *Railroad*, 173 Mass. 10; *Bolin* v. *Railway*, 108 Wis. 333,—81 Am. St. Rep. 911; *Louisville etc. Ry.* v. *Bryan*, 107 Ind. 51.

In this view of the law, the cases which hold that a person who is in fault may recover if there was a time (however short) after the defendants knew of his danger when they could, and no time after he knew of it when he could, have prevented the accident by the use of ordinary care, are directly in line with the cases which hold that the only duty the law imposes on landowners for the benefit of a trespasser is that of not consciously injuring him.   The reason the plaintiff is permitted to recover in the first class of cases is because it can be found that the injury was consciously inflicted; for an injury is consciously inflicted when an intelligent agent, present and acting, actually knows or is conscious that an injury will be inflicted unless he does something it is his duty to do to prevent it, and then negligently fails to act.   He will be held to know the natural and probable consequences of his acts; so if he is conscious that the natural and probable consequences of his failure to act will be an injury to another, and then fails, he must be held to have knowingly caused the injury which results therefrom.

But, on the other hand, an injury can in no sense be said to be consciously inflicted when the person whose act causes it has no actual intention of injuring any one, and is not conscious that any one is where he can possibly be injured, until it is too late to avoid an accident. To determine whether or not an injury is consciously inflicted, it is only necessary to inquire whether the person whose act caused or contributed to cause it was conscious of the dangerous situation in time to prevent the accident. If he was, and failed to act, the resulting injury was consciously inflicted; but if he never knew of the dangerous situation, or after he knew of it could do nothing to prevent an accident, the resulting injury was negligently—not consciously—inflicted. It is a confusion of terms to say that an injury is consciously inflicted when the person who caused it is merely charged with knowledge of the dangerous situation, or when his fault consists of mere inadvertence, if he in fact is not conscious either of an intent to injure or of the presence of the injured person. Notwithstanding a person is negligent if he fails to know what he would have known of his situation and its dangers if he had used ordinary care in that respect, it cannot be said he is consciously in the wrong when his only fault consists of mere thoughtlessness.

As it seems to me, the real reason a trespasser is permitted to recover when the landowners are conscious of his danger at the time they do the act which causes his injury, and do nothing to prevent it although they ought to know their failure to act will probably result in an accident, is not that in such cases his fault is prior in point of causation to theirs, but because in such cases his injury so far partakes of one that is intentionally inflicted that an action to recover for it falls within the rule which permits a wrongdoer to recover whenever his wrongful act merely furnishes the defendants an opportunity to injure him. The reason, therefore, why a trespasser who is injured by the landowners' mere inadvertence should not be permitted to recover if he counts on their failure to perform a landowner's duty, is that it cannot be found his injuries were consciously inflicted; and the reason, if he counts on their failure to do what the ordinary man would have done to avoid injuring him, is that his wrongful entry concurs both in point of time and causation with their failure to use ordinary care to discover him in time to avoid an accident. In other words, the reason he should not be permitted to recover if he counts on their failure to perform a landowner's duty is that it cannot be found they were in fault; and if he counts on their failure to perform their duty of using ordinary care to avoid injuring him, is that it cannot be found he was free from fault.

As it seems to me, section 2, chapter 75, Laws 1899, is merely

declaratory of the common law, for it provides in substance that a person who is injured while trespassing on a railroad's right of way cannot recover unless his injuries are caused by their willful act. The words of the statute are "willful or gross negligence," but it is obvious that the legislature did not intend to give these words their primary meaning, for a negligent act is an inadvertent act, a willful act is one that is intentional, and there can be no degrees of negligence if negligence is the failure to do what the ordinary man would have done in that situation. But these words "willful" and "gross" are often used to describe wrongs consciously inflicted (*Bolin* v. *Railway*, 108 Wis. 333,—81 Am. St. Rep. 911), and, as it seems to me, this is the sense in which the legislature used them. When this statute was enacted the legislature intended that if a person who has no legal right to enter upon a railroad's right of way is notified that any license he may suppose he has to use it has been withdrawn, he cannot recover if he persists in using it, unless the persons who injure him are at least conscious of his danger long enough before the accident to prevent it by the use of ordinary care.

I am unable, therefore, to concur with so much of the opinion as holds that the notice which was put upon the gate was not such a compliance with the requirements of section 1, chapter 75, Laws 1899, as would prevent a person who was injured while on the defendants' right of way from proving he was rightfully there by showing that all persons who had occasion to go to the station from that part of the village were accustomed to enter upon the railroad premises at that point, or with the holding that the plaintiff may recover even if the deceased were a trespasser, provided that ordinary care on the part of the defendants, after they ought to have known—not after they knew—of the deceased's danger, would have prevented an accident.