Sullivan,  }
May 6, 1919. }

### CHELLIS REALTY CO. *v.* BOSTON & MAINE RAILROAD.

### CHARLES W. VADNEY *v.* SAME.

Evidence that the engineer of a locomotive approaching a grade-crossing at the rate of twenty-five miles an hour, and more than 800 feet therefrom failed to stop his engine when signaled, warranted a finding that by due care he could have stopped before reaching the crossing.

Whether a statement made by an engineer directly after a grade-crossing collision was admissible as part of the *res gestae* presents no question of law.

The assertion by counsel, "It don't take thirty rods for a man to stop a locomotive," is a statement not of matter of common knowledge but of a fact to be proved, and if material and unsupported by evidence, is ground for setting aside a verdict, in the absence of a retraction or a finding by the court that the jury were not affected thereby.

TWO ACTIONS OF CASE, for negligence, the first to recover damages to a motor truck caused by a collision with one of the defendants' engines on the highway crossing at North Charlestown, the second to

recover for personal injuries thereby sustained by the driver of the truck. The cases were tried together by jury, a view was taken and verdicts were rendered for the plaintiffs. At the close of the plaintiffs' evidence the defendants moved for nonsuits, and at the conclusion of the evidence they made a motion for directed verdicts. The motions were denied subject to the defendants' exceptions. Exceptions were also taken by the defendants to the admission of evidence, and to the argument of counsel.

Transferred from the May term, 1918, of the superior court by *Branch*, J. The facts appear in the opinion.

*Burt Chellis* and *Jesse M. Barton* (*Mr. Barton* orally), for the plaintiffs.

*Hosea W. Parker* and *Streeter, Demond, Woodworth & Sulloway* (*Mr. Jonathan Piper* orally), for the defendants.

PLUMMER, J. The evidence tended to prove that as the motor truck approached the railroad crossing at North Charlestown on an up grade of about fifteen per cent an employee of the plaintiff company, named Bean, went ahead of the truck to see if a train was coming; that when he reached the crossing he motioned the truck driver, then some ten or fifteen feet from the crossing, to come ahead; that the driver put on more power to go over the crossing, and then Bean seeing a train coming motioned to the driver to stop; that he stopped as soon as he could, but when he stopped the truck was over the first rail so that its front end was about in the middle of the track; that the driver reversed the motor engine as quickly as he could to back off the track, and in doing so stalled the engine; that he then threw the brakes off to let the truck run back; that it started a little way back and stopped, then the driver to enable himself to get off the truck on the right hand side, threw the levers ahead, and jumped from the truck to escape the collision; that the truck might have been stopped by the transmission lever being thrown ahead, or the wheels might have stuck between the planking of the crossing and the hard road; that Bean standing on the crossing gave the engineer a distinct signal to stop, as soon as the locomotive came in view around the curve, which would be more than 800 feet north of the crossing; that the engineer approached the crossing at about twenty-five miles an hour on a down grade of one-fifth to one-half per cent, and did not slacken his speed until about eighty-

five feet north of the crossing, and came to a stop about twice
the length of the engine south of the crossing; that in answer to
Bean's inquiry as to why he did not stop, the engineer said: "I
thought you were far enough away so we would clear you all right";
that the engine involved in the collision was of modern construction
of the Pacific type, and was running without cars attached.

It could be found on the evidence that the locomotive engineer by
the exercise of reasonable care could have stopped his engine before
reaching the crossing and prevented the accident, and it could also
be found that after the truck driver had gotten the truck into a
place of danger upon the railroad track, he was not guilty of negligence
in failing to avoid the collision.  Consequently the motions for non-
suits and directed verdicts were properly denied.  *Altman* v. *Railway*,
75 N. H. 573; *Cavanaugh* v. *Railroad*, 76 N. H. 68; *Morse* v. *Railway*,
76 N. H. 80; *Hardy* v. *Railway*, 77 N. H. 21.

Bean testified that after the collision he asked the engineer why
he didn't stop, and that the engineer replied as above quoted: "I
thought you were far enough away so we would clear you all right."
The defendants excepted to the introduction of this statement in
evidence.  The statement according to the testimony was made
directly after the accident occurred, and its admission as a part of
the *res gestae* presents no error of law.  *Nawn* v. *Railroad*, 77 N. H.
299; *Dorr* v. *Railway*, 76 N. H. 160; *Robinson* v. *Stahl*, 74 N. H.
310; *Murray* v. *Railroad*, 72 N. H. 32.

The plaintiff's counsel in argument to the jury said: "Now, gentle-
men, there cannot be a man on this jury but what knows of his own
knowledge and good common sense that a man can stop a locomotive
in going thirty rods, if he tries to.  Thirty rods is a good distance.
If you don't believe it, walk it off sometime and see the distance.
There was a locomotive coming down there light, didn't have any-
thing attached to it; he had automatic brakes, air brakes that he
could clutch right onto both sides of the wheels.  It was an up-to-
date locomotive, he says, the Pacific type of locomotive, and if he
tried to stop that locomotive he certainly could have done it. . . .
All of us have been in stations, perhaps larger than Newport, when
a train has come in with a string of cars behind it, and come in full
force, right into that station, going fast, when the engineer has stopped
the train there, going a very few car lengths.  It don't take thirty
rods for a man to stop a locomotive, if he tries to."  To this argument
the defendants excepted.  The evidence in the case did not justify
these statements.  There was no evidence to show in what distance

a locomotive could be stopped except that of the engineer operating the engine. He testified that he made an emergency application of the brakes and put on sand to stop the engine just south of the north end of the cross-over, which was less than thirty rods north of the crossing where the accident occurred, and stopped about twice the length of the engine south of the crossing, and that he made a good stop. The plaintiffs attempted to offer evidence as to the distance in which a locomotive going twenty-five miles an hour could be stopped, but the witness offered failed to qualify as an expert. No witness stated that it did not take thirty rods to stop a locomotive running twenty-five miles an hour, or gave any evidence from which such an inference could be drawn. It is claimed that it is a matter of common knowledge that an engine running twenty-five miles an hour on a down grade of one-fifth to one-half per cent can be stopped in less than thirty rods, and therefore that it was competent for counsel to make the statement objected to, without evidence. This contention cannot be sustained. The rule that allows counsel to argue and the jury to decide a question without evidence on the ground that it is a subject of common or general knowledge, "is strictly limited to a few matters of elemental experience in human nature, commercial affairs, and every day life." 4 Wig. Ev., s. 2570. The distance in which a locomotive going at a certain rate of speed can be brought to a stop, is knowledge that the average man in the community does not possess. Information of this character is acquired by experience in operating engines, such as men in general do not have. "In estimating time, distance, and rapid motion, the mass of men are inexpert." *Huntress* v. *Railroad*, 66 N. H. 185, 190. We have seen only one case where the precise question under consideration has been passed upon. In *Union Pac. R. Co.* v. *Shannon*, 33 Kan. 446, it was held that the distance in which a railroad engine running at a certain speed can be stopped is not a matter of common knowledge. That the importance and necessity of furnishing proof upon this question was fully realized by counsel, is shown by his attempt to introduce testimony relative thereto. And upon his failure to do so, he did not content himself with asking the jury to find the fact from their own knowledge (*State* v. *Currier, ante,* 171) but sought to supply the deficiency by his own statement of the fact. The argument went beyond the scope of legitimate advocacy. The defendants were entitled to have the cases tried and verdicts rendered wholly upon the evidence introduced at the trial, and, if the improper remarks had any weight with the jury, the defendants were deprived

of that fair and impartial trial which was their right under the law. The facts stated of which there was no evidence, were not only material and pertinent, but related to a vital issue in these cases, and it cannot be said, as a matter of law, that the jury was not influenced by them in returning the verdicts. There being no retraction of the improper remarks nor finding by the court that the jury were not affected thereby, the verdicts must be set aside.

*Exceptions to the denial of nonsuits and directed verdicts, and to the admission of evidence overruled: exception to argument sustained: verdicts set aside: new trial granted.*

All concurred.