### ADOLF OLSEN v. BOSTON & MAINE RAILROAD.

In the absence of other sufficient precaution or excusing circumstances, a pedestrian is guilty of contributory negligence in failing to look for an electric car the approach of which may reasonably be anticipated, before stepping upon the track.

A motorman observing a pedestrian walking beside the track, ahead of the car, is not negligent in failing to assume that he will step upon the track in front of the approaching car, there being nothing in his appearance or conduct to indicate such an intention.

CASE, for negligence. Trial by jury and verdict for the plaintiff. Transferred by *Sawyer*, J., on the defendant's exceptions (1) to the denial of its motions for a nonsuit and a directed verdict and (2) to the submission of the case to the jury under the doctrine of the last clear chance.

While crossing the defendant's street-car tracks at West Concord, the plaintiff was struck by an electric car and injured. He was about fifty-six years old and in the full possession of his physical and mental faculties. He had lived in Concord for nearly twenty years and during much of that time had worked on ice teams. On the day he received his injury he and his employer, Anderson, were delivering ice in a motor truck.

North State Street at the place of the accident runs nearly north and south, and the track is on the westerly side of the street. Shortly

before the accident Anderson sent the plaintiff to Harrington's store to ask if ice was needed. The store was situated west of the track, and the ties in front of the store were "filled," or covered with earth, to form a crossing.

According to the plaintiff's evidence Anderson stopped the truck about 15 or 20 feet south of this crossing. On the north side of the store there was a back entrance where the ice was taken in. The distance from a point in the highway opposite this back entrance to the rear of the truck was about 30 feet.

Olsen, having received an order for ice, notified Anderson, who descended from the truck (the engine of which was still running), cut the ice into two seventy-pound cakes, and started toward the store with one of them, leaving Olsen to follow with the other. Olsen testified that when he had taken two or three steps he looked south and saw no car. He could then see down the track a distance of only 35 or 40 feet, since his view was obstructed by the truck. For nearly 700 feet south of the crossing the track ran practically straight.

It was customary for the defendant's motormen when passing vehicles near the track to diminish speed and to sound the gong. The plaintiff stated that he knew of this custom and expected the bell would ring if a car was approaching but that he "never heard any bell that day." He did not look again to see if a car was in sight, but walked forward to the crossing and stepped deliberately upon the track. He then heard a noise, and, turning his head, saw the car "right on" him. He was struck by the car, and thrown to the northwest side of the crossing.

Meanwhile Anderson had crossed the track in safety and delivered his ice. He did not learn of the accident until he had left the store.

Further facts are stated in the opinion.

*Robert W. Upton* and *John M. Stark* (*Mr. Upton* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

MARBLE, J. 1. In the following cases where adult pedestrians have been injured while crossing or walking upon railway tracks, recovery has been denied: *Currier v. Railroad*, 78 N. H. 586; *Coyle v. Railroad*, 77 N. H. 604; *Bonnin v. Railroad*, 77 N. H. 559; *Doucette v. Railroad*, 77 N. H. 419; *Connelly v. Railway*, 77 N. H. 280; *Chabott*

v. *Railway,* 77 N. H. 133; *Greenwood* v. *Railroad,* 77 N. H. 101; *Lord* v. *Railroad,* 74 N. H. 39; *Batchelder* v. *Railroad,* 72 N. H. 528; *Myers* v. *Railroad,* 72 N. H. 175; *Waldron* v. *Railroad,* 71 N. H. 362; *Davis* v. *Railroad,* 70 N. H. 519; *Gahagan* v. *Railroad,* 70 N. H. 441.

Although a pedestrian is not subject to a more stringent rule of law than that which governs other travelers, the fact that he has "nothing to control except his own locomotion" (*Bonnin* v. *Railroad, supra,* 562) is a distinguishing circumstance of material importance on the issue of contributory negligence — an issue which the jury must determine unless it conclusively appears that at the time of the accident the injured person was not in the exercise of ordinary care. *Collins* v. *Hustis,* 79 N. H. 446.

In support of his contention that the defendant has not sustained its burden on this issue (Laws 1923, *c.* 13) the plaintiff calls attention to the following facts: He looked south on leaving the store and again as he was leaving the truck; he was also watching the highway for automobiles that might be coming from the north; he expected the motorman of any car that might be approaching to sound the gong, and, hearing no gong, believed it was safe to cross the track.

The plaintiff testified that when he came out of Harrington's store and looked south, he had an unobstructed view of the track for a distance of over 700 feet. The fact that no car was then in sight, however, did not absolve him from the duty of looking again, since the time consumed in returning to the truck, reporting to Anderson, cutting and weighing the ice and preparing it for delivery must have been substantial.

When he looked the second time he admits that he could see only 35 or 40 feet because the truck cut off his line of vision. But he knew that this was so and also knew that he could obtain a clear view as he came nearer the crossing. He was aware that cars were running every few minutes, and reasonable care on his part demanded some precautionary act approximately contemporaneous with the impending danger. He could not elect to watch only for automobiles and close his eyes to an equally perilous situation. Nor was he justified in relying altogether upon the gong. *Gahagan* v. *Railroad, supra,* 448. As defendant's counsel have suggested, if he had consciously listened for the approach of the car he would have heard it unless the noise of its approach was drowned by the noise of the automobile engine, which he knew Anderson had left running.

The instant case is clearly distinguishable from those cases in which adult pedestrians have been permitted to recover.

In *McGinley* v. *Railroad*, 79 N. H. 159, the locomotive which struck the plaintiff was so completely enveloped in steam and was moving so noiselessly and so slowly that the plaintiff was justified in thinking that it was standing still. The case of *Nawn* v. *Railroad*, 77 N. H. 299, was an action for the death of an employee put to work in a dangerous place and killed a few minutes later. The evidence in *Bourassa* v. *Railway*, 75 N. H. 359, tended to prove that the plaintiff before entering upon the track "looked up the track and saw no train; that the distance over which the track was open to observation was such that no train not then in sight, running at a speed reasonable under all the circumstances or usual upon this track, could overtake him before he reached the point where he proposed to leave the track; and that he had reasonable ground for believing, and did believe, that no train would pass over the track at that hour of the day." There were reasonable grounds for a like belief in *Piper* v. *Railroad*, 75 N. H. 228, in *Minot* v. *Railroad*, 73 N. H. 317, and in *Brown* v. *Railroad*, 73 N. H. 568. In the last-named case the deceased was not walking between the rails but in a path at the side of the track, and was presumably drawn under the cars by the suction of the train. *Welch* v. *Railroad*, 78 N. H. 277, *Mitchell* v. *Railroad*, 68 N. H. 96, and *Nutter* v. *Railroad*, 60 N. H. 483, were cases of justifiable reliance upon warning customarily given or required by statute.

Although Olsen followed Anderson, he was some distance behind, and did not rely on him to keep a lookout. The case differs in that respect from *Chellis Co.* v. *Railroad*, 79 N. H. 231.

No practical purpose can be served by reviewing the numerous cases involving injuries to persons traveling in motor vehicles or other conveyances. Since each case depends upon its own peculiar circumstances (*Bonnin* v. *Railroad*, *supra*, 562; *Bass* v. *Railway*, 70 N. H. 170, 172), perfect harmony among the decisions is scarcely to be expected. It is sufficient to say that there are no facts or circumstances in the present case by which the plaintiff's failure to take some precautionary measure immediately before stepping upon the track can be justified.

2. This does not dispose of the case, however, if there was evidence from which it could be found that the defendant's motorman "knew the plaintiff's danger in time to have prevented the injury." *Johnson* v. *Director-General*, 81 N. H. 289, 290. There was no question but that the motorman acted promptly upon discovering Olsen's presence on the track, but the witnesses differed with respect to the

exact point where Olsen entered upon the track, the defendant's testimony tending to prove that he entered it from directly behind the ice-truck, and that the truck was opposite the store. There was also a conflict of testimony as to whether the motorman was talking to a passenger or looking ahead. There was no direct evidence that he observed Olsen walking beside the rails, but counsel argue that such observation could properly be inferred from Olsen's assertion that he was walking there and the testimony of the defendant's witnesses that the motorman was vigilant.

Assuming, however, that such inference might legitimately be drawn, it does not follow that the doctrine of the last clear chance is applicable unless there was also evidence warranting the further inference that the motorman knew, or ought to have known, that Olsen was oblivious to his peril.

The only description of the plaintiff as he proceeded along the track comes from his own lips. After stating that Anderson took a piece of ice and started for the store in the direction indicated on the plan by a diagonal line extending from the rear of the truck to the northerly half of the crossing and scaling 32 feet, he said: "I went the same way . . . I took a piece and came after him . . . I was going to carry it to the store, and I walked just about two or three steps and I turned back, turned my head like that, looking for the car . . . I never see anything at all . . . I went up on the road . . . We always go that way."

On cross-examination he stated that after taking two or three steps and looking south he did not look for a car again until he had reached the middle of the track, and that he walked back alongside the track 15 or 16 feet in a northerly direction before starting to cross.

Obviously, there is nothing in this testimony on which reasonable men might find that the motorman ought to have anticipated the plaintiff's negligence. "The bare fact that the plaintiff was seen approaching the track is not sufficient to authorize such a finding." *Gahagan* v. *Railroad, supra,* 451. In the nature of things the motorman could not have known "the status of the plaintiff's mind" (*Ib.,* 452), and there were no evidentiary facts sufficient to charge him with such knowledge. *Waldron* v. *Railroad, supra,* 366.

The exceptions are therefore sustained.

*Judgment for the defendant.*

PLUMMER, J., was absent: the others concurred.