Hillsborough, ⎫
March 7, 1933. ⎬

### Peter J. O'Malley *v.* Francis E. McGillan.

### Rita O'Malley *v.* Same.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiffs.

*Devine & Tobin (Mr. Tobin orally)*, for the defendant.

BRANCH, J. 1. The plaintiff, Rita, testified, subject to the defendant's exception, that for a period of six weeks in 1929 she went without household help, which she needed, because she could not afford it. It is now argued that "testimony as to her financial inability to engage help was immaterial to any issue in the case" and prejudicial to the defendant. The plaintiff's claim was one of continuing disability resulting from the accident. The defendant asserted that any disability under which she labored during the period in question resulted from the birth of a child. It might be found, however, that her injuries made it hard for her to do her work, including the care of the child, and in this view of the evidence it was proper to explain why she did not have help for a time. *Maravas* v. *Corporation*, 82 N. H. 533, 542; *Laird* v. *Railroad*, 80 N. H. 377, 380 and cases cited. No instructions against a possible misuse of the evidence were sought. The exception is, therefore, overruled.

2. The defendant requested the following instruction:

"3. Where a person is suddenly called upon to act in an emergency, this fact must be taken into consideration in determining the quality of his act. The excitement incident to such a situation naturally affects the judgment of a prudent man and has a tendency to prevent it from doing its best work. If the circumstances surrounding this accident caused an error in judgment on the part of the defendant, his act is not necessarily negligent."

The court instructed the jury in substance that if the defendant acted in a sudden emergency, his mistaken choice of a course of conduct which did not lead to safety was not necessarily negligent although another course of conduct was open to him which would have led to safety.

The defendant excepted to the denial of the above request, and it is now argued that the charge did not give him the full benefit of the so-called emergency doctrine because the second sentence of the request was not included therein. We need not consider the merits of this argument because we find in the record no evidence which called for an application of that doctrine in judging the conduct of the defendant.

The principle has been stated as follows: "If a person is suddenly called upon to act in an emergency involving the safety of the life or limb of a human being, this fact must be taken into account in determining the quality of the act." *Carney* v. *Railway*, 72 N. H. 364,

372. "The existence of an emergency is merely one of the factors in the light of which the conduct of the actor must be judged. The standard of conduct does not vary in such cases. It must be reasonable." *Jones* v. *Railroad*, 83 N. H. 73, 84. For other statements of the same principle see 45 C. J. Tit. Negligence, *s.* 92; note to *Lemay* v. *Company* (210 Mass. 63) in 37 L. R. A. (N. S.) 43.

The question whether the defendant's conduct was hurried or otherwise influenced by the stress of an emergency was a fact peculiarly within his knowledge and he was not entitled to have his conduct judged upon any basis more favorable than that which he set forth in his own testimony. *Harlow* v. *Leclair*, 82 N. H. 506; *Fraser* v. *Railway*, 84 N. H. 107, 111; *Saidel* v. *Society*, 84 N. H. 232, 233; *Morris* v. *Railroad*, 85 N. H. 265, 269, 276. "He testified as to his knowledge and conduct of which he alone could have knowledge, and it would be inconsistent with honesty and good faith for him to recover on a finding of conduct wholly different from that which he claimed in his testimony and which was specially within his knowledge." *Fraser* v. *Railway, supra.*

The defendant was driving north on the Daniel Webster highway and wished to stop at the Libby Fox Farm, so-called, which was located on the west side of the road. In order to reach a parking space in front of the fox farm it was necessary for him to make a left turn across the line of south bound traffic. He testified that before making the turn he stopped, looked north and saw that there was no car coming south; that he then started to make the left hand turn, and at that time noticed a car coming south which was then 200 or 250 feet away; that he "had no occasion to think that there was any danger at that time" and "went ... straight ... across the road." The statement that he did not think there was any danger at that time was reiterated twice upon cross-examination as follows: "Q. Well, now going across the road did you do anything to go faster, increase your speed, when you saw this car coming? A. No, I saw no reason to have to go faster." "Q. Now if you were only here at the center of the road when you saw this car coming from the north why didn't you stop? A. I didn't think there was any danger at that point." At no time did the defendant testify that he realized the probability or feared the possibility of a collision or that his conduct was in any way influenced by such a possibility. Since from his point of view no "emergency involving the safety of the life or limb of a human being" existed, it is plain that the emergency doctrine was not a factor to be considered in passing upon the question of his due care.

The case appears to have been tried solely upon the theory that the defendant was negligent in undertaking, as he did, to pass in front of the south bound car. No claim of supervening negligence in dealing with the dangers which this attempt actually involved appears to have been made. For this reason the subsequent testimony of the defendant that he caught a second glimpse of the south bound car after he made the turn and after his car had left the roadway appears to be immaterial. The only testimony upon this point was as follows: "Q. Did you have the Davis car in your vision again after you saw it for the first time? A. Well I got a glance of it as I was going off the road. Q. Can you give us some idea as to where it was then? A. I would say it was leaving the road, I couldn't state just how far away it was but as I glanced I noticed it coming toward me off the road. Q. At that time your car was where? A. It was pretty near off or all off the road."

There is no suggestion in the record that at this time the defendant had it in his power to avoid the accident by the exercise of due care. In view of the fact that the collision occurred when the rear of the defendant's car was five or six feet off the road and that it had already passed beyond the roadway when the defendant obtained the above mentioned "glance" at the other machine, it is difficult to see how such a claim could reasonably have been made. The plaintiffs attached importance to this testimony only as a basis for their claim that this was the first rather than the second time that the defendant saw the south bound car and that he was negligent in failing to see it sooner.

Since the evidence did not disclose a situation in which the defendant was entitled to invoke the benefit of the emergency doctrine, the instruction which the court gave was unduly favorable to him and he is in no position to complain because the law upon this point was not more fully explained to the jury.

*Judgments on the verdicts.*

All concurred.