Hillsborough, }
June 2, 1936.}

JOSEPH SARKISE *v.* BOSTON & MAINE RAILROAD.

*William A. Joyce* and *O'Connor & Saidel* (*Mr. Saidel* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham* (*Mr. J. Walker Wiggin* orally), for the defendant.

MARBLE, J. The plaintiff was an employee of the Lasell Shoe Company in Nashua. During the noon hour on the day of the accident he and several of his fellow employees were playing baseball on a rudely improvised diamond located partly on the shoe company's land and partly on the land and tracks of the defendant. The tracks lay south of the factory and were four in number. The first was a spur track leading to the factory and branching off from the second track at an oblique angle.

Between these two tracks, at a point ten feet from their intersection and about a foot from the north rail of the second track, the ball players had placed a stone and a piece of paper to serve as third base. Track No. 3, which was the main track, was parallel with track No. 2, and the fourth track extended southeast from the main line. There was evidence that cars were being shunted over these tracks while the ball game was in progress.

Just before the accident occurred the plaintiff was standing near third base, facing east, when a fly ball was batted in his direction. He testified that he reached out his arm to catch this ball and was just ready to put his foot over the north rail of the second track when he was struck by the defendant's switching engine, which was approaching from the west.

According to the testimony of the trainmen the accident did not take place on the second track but on track No. 3. One of the de-

fendant's yard crew testified that shortly before the accident happened he told the plaintiff that the engine was coming down on that track and that the plaintiff answered, "All right." The plaintiff did not contradict this testimony.

The fireman testified that the engine was proceeding eastward on the third track at a speed of only two or three miles an hour; that he was looking out of the left-hand window of the cab when he noticed the plaintiff standing with his back to the locomotive in the angle between the first two tracks at a point approximately six feet from the north rail of the second track; that when the fly ball was knocked, the plaintiff ran diagonally backward across track No. 2, having first turned and looked at the engine, and that when he started to run backwards the engine was about 20 feet west of the point of collision.

The following is quoted from the fireman's testimony: "We never struck him; he struck us . . . he turned around and looked and saw where the ball was coming, and then he apparently thought he had time to collect the ball, because he stuck his hand out, and when he stuck his hand out, either he tripped on the tie, or something, I can't tell what did happen, because I hollered to the engineer 'whoa' and he stopped on the spot." In answer to the question, "Now, as he was coming backwards . . . did he do anything to indicate to you that he saw you coming?" the witness testified: "He was backing to field the ball, and knowing that we were in that vicinity, apparently, he glanced around and looked at the engine,—I saw a full view of his face,—to see what he was doing, and apparently to me he saw us coming, and he was going to stop; then he glanced at the ball again, and suddenly reached his hand out to grab the ball."

On any theory of the accident fairly inferable from the evidence the plaintiff was guilty of contributory negligence as a matter of law. He was an adult in the complete possession of his faculties, and there is no evidence of a reasonable belief on his part that the tracks would not be occupied by trains or locomotives while he was there. See *Chabott* v. *Railway*, 77 N. H. 133; *Bonnin* v. *Railroad*, 77 N. H. 559; *Olsen* v. *Railroad*, 82 N. H. 120; *Bursiel* v. *Railroad*, 82 N. H. 363.

"The jury were not warranted in finding that he performed the duty of care imposed upon him; for it does not appear that he used any care with reference to his position . . . which he knew, if he had thought about it, was attended with the special danger which caused his injury." *Cronin* v. *Company*, 75 N. H. 319, 320. Nor can he justify his conduct by showing that he was intent upon catching the ball. "A plaintiff may not say that he was not required to give

attention because of other considerations. It is not careful conduct to pay no heed to the demands of safety." *Robinson* v. *Railroad*, 85 N. H. 474, 476.

Neither can he avail himself of the doctrine of the last clear chance. In order to establish liability under that doctrine he was required to prove not only that he was ignorant of his peril, or unable to extricate himself therefrom, but that the defendant had actual knowledge of such ignorance or inability on his part and after such knowledge had a clear opportunity to avoid the accident by the exercise of ordinary care. *Clark* v. *Railroad*, 87 N. H. 36, and cases cited; s. c., 87 N. H. 434; *Paulette* v. *Railroad*, *ante*, 10 and cases cited.

The doctrine is obviously inapplicable if the plaintiff's own version of the accident is true, since, according to his testimony, his backward movement toward the second track was simultaneous with the arrival of the locomotive. He does not claim that he stood in a spot where the engine would have struck him if he had not moved, and it cannot be found that the fireman knew he was unmindful of his surroundings or that he would suddenly step back into danger. *Olsen* v. *Railroad*, 82 N. H. 120, 124.

In seeking to bring himself within the last-chance rule, however, he ignores his own unequivocal assertions and relies on selected portions of the fireman's testimony quite at variance with his own account of the accident. This he is not entitled to do.

It is true that the rule of *Harlow* v. *Leclair*, 82 N. H. 506, does not apply where the plaintiff's testimony relates to objective matters about which he may be mistaken. *Watkins* v. *Railroad*, 83 N. H. 10, 13; *Barrett* v. *Company*, 85 N. H. 33, 35; *Feuerstein* v. *Grady*, 86 N. H. 406, 409, and cases cited. But here, as in *Morris* v. *Railroad*, 85 N. H. 265, 276, there is nothing in the record to indicate that the plaintiff "was confused or uncertain as to what he actually did." He is assumed to have average intelligence, and his description of his conduct is not only clear but emphatic. See *Coté* v. *Company*, 86 N. H. 238, 240.

We quote the following from his testimony: "Q. Now what happened there? A. Well, I was trying to catch a fly ... and I stuck out my right arm and was just ready to put my foot over track No. 2 when I got struck. Q. That is, the ball was out here on third base? A. Yes. Q. Over track No. 2? A. Yes, right over track No. 2. Q. And you reached over to catch the ball? A. Yes. Q. And put your foot over track No. 2. A. Just ready to put my foot over track No. 2; I didn't get there ... Q. You are sure you were struck at

track No. 2? A. That was where I was struck, and it knocked me over to track No. 1. Q. And the engine was on track No. 2? A. Yes . . . It came forward on No. 2; it didn't come down on No. 3 at all. Q. You say it was on track No. 2 at the time you had your accident? A. Yes, sir. Q. You swear to that, do you? A. I do . . . I never stepped near track No. 3."

Since the plaintiff is bound by these answers, it is unnecessary to decide whether, if he were not so bound, the verdict, could be sustained. See *Fraser* v. *Railway*, 84 N. H. 107, 111; *Noel* v. *Lapointe*, 86 N. H. 162, 166; *O'Malley* v. *McGillan*, 86 N. H. 186, 188; *Bridgham* v. *Effingham*, 87 N. H. 103, 107.

*Judgment for the defendant.*

All concurred.