Rockingham, May 2, 1939. } No. 3071.

ESTHER G. KECK *v.* RUSSELL C. HINKLEY.

ESTHER G. KECK, *Adm'x v.* SAME.

CLARENCE W. PALM, *by his father and next friend* CARL H. PALM

*v.*

SAME.

W. V. T. HINKLEY *v.* CLARENCE W. PALM.

*William H. Sleeper*, (by brief and orally), for the plaintiffs Keck and Palm.

*Arthur E. Sewall* and *Thomas L. Cleaton* (*Mr. Sewall* orally), for the defendant Hinkley.

WOODBURY, J.   Russell C. Hinkley, hereinafter referred to as the defendant, does not contend that either of the Kecks were guilty of any negligence which caused or contributed to cause the accident.

His contention is that the sole legal cause of the accident was the negligence of Clarence W. Palm. In support of his position he cites his own testimony to the effect that his car and that of Palm "sideswiped" one another in the center lane, and argues that this testimony must be regarded as true from the nature of the damage to his car and from certain testimony of Esther G. Keck which will be considered hereafter.

The above testimony of the defendant as to the place on the highway where the first collision occurred is contradicted by that of Palm. The latter testified that as he approached the scene of the accident he was traveling in his right hand lane and that the defendant, in attempting to pass the car ahead of the Keck's, made an "arcing sweep" over into the southbound lane of travel. With reference to the defendant's car Palm testified, "Well when I first noticed it it was in the center, center lane, and I didn't pay a great deal of attention, but as my car and his car came closer, I noticed that he was gradually getting over into my lane so I had a tendency to pull the car off the road without putting it into the woods, if possible." Palm also said that although he was not sure whether or not he drove onto the shoulder, he was as far off the road to his right as he dared to go.

The above testimony of Palm is corroborated by the testimony of a police officer concerning a tire mark which he observed upon the road soon after the accident and which he measured upon the following day. This mark led from the position of the Palm car after the accident in a straight line up and diagonally across the road toward Portsmouth. It was about two hundred feet long and its northerly terminus was at a point a few inches off the pavement on the westerly side of the road. It does not appear that Palm applied his brakes at any time before his car came to a stop after the second accident, but from the nature of the contact between his car and that of the defendant, and from the testimony of Palm that he was unable to control his car after that collision, it is a reasonable inference that the front wheels of his car were put out of alignment in the first collision in which it was involved and that this was the cause of the tire mark made by his right front wheel. This inference is further supported by the lack of evidence of anything to cause the right front tire of the Palm car to scuff along the road except the collision between that car and the car of the defendant. From the evidence above, and from the fact that the scuff mark was straight, showing no deviation as it approached and crossed the center lane such as would

be expectable had the collision occurred in or near that lane, the inference follows that the Palm-Hinkley collision occurred not only in the westernmost lane but also in the westerly part of it when Palm was driving with his right wheels over on the shoulder of the road.

The defendant contends that the foregoing evidence and inference must, as a matter of law, be rejected as untrue because the nature of the damage to his car, as established by uncontradicted testimony and unimpeached photographs, conclusively establishes that the collision between his car and that of Palm occurred in the center lane.

The front of the Hinkley car was not damaged at all. The first injury to it appears upon the left front fender approximately over the wheel. From that point toward the rear the dents and scratches become progressively deeper and the left rear fender was practically demolished. It is argued from this that the cars collided at such an angle as could only be achieved by the Palm car turning to its left out of its lane and into the center one occupied by the defendant. While it is true that the damage to the Hinkley car could have been caused in this way, it is not true that this is the only way in which it could have been caused. It is possible that the proved damage to the Hinkley car could have occurred in the south bound lane as the defendant was completing the "arcing sweep" testified to by Palm, and that the progressively more serious damage toward the rear of that car was caused by the continued forward motion of the Palm car.

The defendant further contends that the testimony of the plaintiff Keck also conclusively establishes that the collision occurred in the center lane. She testified, after repeated questions and with evident hesitation, that the collision between the Hinkley and Palm cars occurred when they were twenty-one feet ahead of the car in which she and her husband were riding. She arrived at this estimate of distance by referring to objects in the court room which were later measured. From this testimony the defendant argues that his collision with Palm must have occurred in the center lane, for had it occurred in the westernmost lane and only twenty-one feet ahead of the Keck car, the Palm car could not have turned and swung across the road in season to collide with a car moving toward it at thirty-five miles per hour. He also argues from this testimony that the collision between the Palm and Hinkley cars must have occurred in the center lane because the brake-mark testified to by the police officer crossed the yellow stripe into the center lane at a point seventy-five feet north of the point of collision between the Palm and Keck cars.

The conclusion which these arguments reach is not compelled as a matter of law because they are both based upon a lay witness' estimate of distance. In the first place such testimony is notoriously inaccurate. In the second place it does not bind the plaintiff because it relates to an objective matter about which she might well be mistaken. *Sarkise* v. *Railroad*, 88 N. H. 178, 181, and cases cited.

It is obvious from what appears above that the question of the defendant's negligence was for the jury. It is equally obvious that the question of whether it was the legal cause of the accident or whether the legal cause of the accident was the failure of Palm to control his car after it collided with that of the defendant was also for the jury.

*Exceptions overruled.*

All concurred.